**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250429-U

Order filed August 11, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| ASHRAF OMAR AMAYA, | ) | Will County, Illinois, |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | Appeal No. 3-25-0429 |
| and | ) | Circuit No. 21-D-258 |
| | ) | |
| FAYE AMAYA, | ) | Honorable |
| | ) | Gabriel G. Orenic, |
| Respondent-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE BERTANI delivered the judgment of the court.
Justices Holdridge and Brennan concurred in the judgment.

_____

**ORDER**

¶ 1  *Held*:  The circuit court's division of sale proceeds from the marital home constituted an improper modification of the property disposition in the dissolution judgment.

¶ 2  Petitioner, Ashraf Omar Amaya, appeals from the circuit court's postdissolution order allocating to him and respondent, Faye Amaya, the proceeds from the sale of their marital home. Ashraf challenges the allocation arguing that it was inequitable and inconsistent with the court's prior judgment. We affirm as modified and remand.

¶ 3                                    I. BACKGROUND

¶ 4          Ashraf and Faye married in 1999 and have one child who had reached the age of majority and was attending college when the marriage dissolved. On February 11, 2021, Ashraf petitioned for dissolution of marriage. The parties proceeded as self-represented litigants at trial, in postjudgment proceedings, and in this appeal.

¶ 5          The circuit court entered a judgment for dissolution of marriage on September 17, 2021. The judgment ordered the sale of the marital home and an equal division of the proceeds. It neither specified a deadline for the sale nor outlined the mechanics thereof. The judgment required that Faye pay the principal mortgage, home equity line of credit (HELOC), insurance, and cost of maintenance associated with the marital home until its sale. The principal mortgage payment included escrow payments for real estate taxes and insurance. The record indicates that Faye, not Ashraf, was in possession of the residence at the time of judgment and thereafter.[1] The judgment further ordered the sale of two motor vehicles, the proceeds of which were "to be split."

¶ 6          On April 27, 2023, Ashraf filed the first of numerous motions to enforce or advance the sale of the marital home. He also filed several pleadings against Faye which alleged she was obstructing the sale. The home ultimately sold approximately three and a half years after the judgment was entered. We need not chronologize each motion and petition but reference the filings and corresponding court orders necessary to evaluate the court's marital property division.

¶ 7          The court entered an agreed order on August 15, 2023, directing that the home be listed for sale within 60 days. On October 28, 2024, Ashraf petitioned for a rule to show cause for indirect civil contempt alleging Faye had obstructed the sale of the home. The court entered a written order

---

[1]Among other evidence of record, Ashraf's September 24, 2021, notice and motion for a new trial indicates he sent notice to Faye at the marital residence in Plainfield, Illinois, and that he lived in Downers Grove, Illinois.

on November 21, 2024, following a hearing on one or more of Ashraf's motions to sell the home which provided that the parties agreed to a listing agent and that the property would be listed on the multiple listing service through that agent within two days.

¶ 8    In early March 2025, Ashraf moved to remove Faye from the marital home, to compel the acceptance of a current offer to purchase the home, or in the alternative, to compel the relisting of the home for sale. He alleged Faye's presence in the home during showings impeded its sale, she had declined multiple showing requests, rejected two prior offers, and allowed the property to enter pre-foreclosure by failing to pay the principal mortgage.

¶ 9    The court heard Ashraf's petition for rule to show cause and motions on March 6, 2025, and took the matters under advisement before issuing a written order on March 10, 2025. It took judicial notice that a hearing for summary judgment and judgment of foreclosure was scheduled for March 26, 2025, in a foreclosure action against the marital home. While the court did not enter a finding of contempt against Faye, it concluded that she had failed to preserve the home and keep current on the mortgage payments as directed by the dissolution judgment and that she "obfuscated the sale of the home through her actions and uncooperative behavior." It reviewed the parties' competing market analyses of the home, acknowledged the current listing price had not resulted in a sale, identified the current cash offer outlined in Ashraf's motion, and ordered the parties to sign the offer pursuant to its authority to enforce the judgment of dissolution and its authority to force the sale of the home under the Illinois Marriage and Dissolution of Marriage Act (Act). See 750 ILCS 5/503(i) (West 2024). A subsequent agreed order instructed the parties to honor the contract's closing date and directed Faye to vacate the property.

¶ 10    Soon thereafter, Ashraf filed an emergency petition for the court to sign documents on Faye's behalf necessary to complete the sale. The resulting order found Faye's actions were an

3

attempt to block or delay the sale of the home and constituted harassment. Faye, who admitted she had made no effort to vacate the property, was again ordered to vacate.

¶ 11    The sale yielded $157,564.40 in net proceeds which the court ordered held in escrow and reserved the issue of allocation for its future determination. The court denied Faye's subsequent emergency motions to reconsider and to stay the sale pending appeal. Ashraf filed a motion for temporary financial relief which prompted the court to order the release of $50,000 to each party. The remaining escrowed funds were ordered held "until further order of court."

¶ 12    Prior to the court's final distribution, each party filed motions pertaining to the division of marital assets. Ashraf filed motions requesting moving and storage fees necessary for completing the sale and to assess costs of foreclosure and unpaid loan payments against Faye. Faye filed motions requesting the court divide the remaining proceeds equally and order Ashraf to be responsible for half of the delinquent mortgage payments based on an alleged prior agreement. She also sought reimbursement for their child's college tuition and an equal division of proceeds from the sale of two marital vehicles.

¶ 13    The court entered a written order on August 8, 2025, dividing the remainder of the proceeds. Noting that the judgment required Faye to maintain both mortgages, it granted Ashraf's motion and assessed to Faye the costs of foreclosure and unpaid loan payments in the total amount of $38,589.95 itemized as $26,756.95 for the principal loan; $5,841 for the HELOC; $4,170 for foreclosure attorney costs; and $1,822 for other costs associated with foreclosure. It also granted Ashraf's motion for $5,498 in storage and moving fees. It granted Faye's petition for contribution to the parties' child's college expenses in the sum of $2,000 and awarded $4,250 to each party from the sale of marital vehicles. It denied the rest of the parties' motions, including Faye's

4

motions to find that the parties had an agreement to equally contribute to the mortgage payments and to equally divide the remaining sale proceeds.

¶ 14 It awarded Ashraf $37,837.95 and Faye $19,726.45 from the remaining $57,564.40 escrow balance. The court arrived at those figures by taking the expenses assessed against Faye totaling $44,087.95 and subtracting the tuition payment and marital vehicle proceeds that Ashraf owed to Faye resulting in a net reduction in proceeds of $37,837.95 attributable to Faye. It explained this process as follows:

> "There's currently $57,564.40 held in escrow. Each party has previously received $50,000 per the Court's prior order. Ultimately, when I take [Faye's] expenses *** that's a total of $44,087.95 that would be part of Ashraf's share. Take the $2,000 for the daughter's tuition, $3[,]500 for the Porsche, $750 for the motorcycle, that leaves $37,837.95 to be distributed to Ashraf, $19,726.45 to be distributed to Faye."

¶ 15 Ashraf appeals.

¶ 16 II. ANALYSIS

¶ 17 Ashraf argues that the circuit court inequitably divided the proceeds from the sale of the marital home. He contends the court should have awarded him the sum of Faye's financial responsibility greater than the portion she received. He posits that he should therefore receive $37,837.95 more than Faye to fully assess to her the financial responsibility outlined in the dissolution judgment. Faye responds that the court correctly distributed the proceeds pursuant to the Act. She also argues that the parties had an agreement to divide their mortgage payments equally after the marriage dissolved. However, Faye did not file a cross-appeal; thus, we are without jurisdiction to address that issue and may only consider those properly raised in Ashraf's

5

notice of appeal. See *Deutsche Bank National Trust Co. as Trustee for Home Equity Mortgage Loan Asset-Backed Trust, Series INABS 2005-B, Home Equity Mortgage Loan Asset-Backed Certificates, Series INABS 2005-B v. Barrera,* 2020 IL App (3d) 180419, ¶ 30.

¶ 18     Ashraf's appeal raises the issue of whether the court's postjudgment order that distributed the equity of the parties' estate ran contrary to provisions of property disposition in the dissolution judgment. By shifting Faye's assigned expenses to Ashraf through its apportionment, we hold the circuit court impermissibly modified provisions within the parties' dissolution judgment without the jurisdiction to do so.

¶ 19     Section 510(b) of the Act provides that a circuit court may not modify provisions concerning property disposition, unless it "finds the existence of conditions that justify the reopening of a judgment under the laws of this State." 750 ILCS 5/510(b) (West 2024). Provisions for the disposition of property in a final dissolution judgment confer vested rights that may not subsequently be modified by a circuit court due to a lack of jurisdiction. *In re Marriage of Davis*, 292 Ill. App. 3d 802, 807 (1997). An impermissible modification of a judgment occurs where "new obligations are engrafted onto a party under the order." *In re Marriage of Warner*, 2020 IL App (3d) 190198, ¶ 22; *Waggoner v. Waggoner*, 78 Ill. 2d 50, 54 (1979).

¶ 20     The judgment of dissolution ordered the sale of the marital home with equal division of the proceeds. It ordered Faye to maintain the property and stay current on its mortgage, taxes, and insurance. She was therefore "expected to pay [these debts] and to do so in a manner that [did] not expose the other party to liability on the debt[s]." *Davis*, 292 Ill. App. 3d at 807. She failed to do so resulting in the institution of foreclosure proceedings by the principal mortgagee. The lender had pending motions for summary judgment and entry of judgment of foreclosure at the time the circuit court ordered the parties to accept the pending offer and proceed with the sale. The home

6

sold and netted $157,564.40. An equal division of these proceeds is $78,782.20; however, the court noted the proceeds had been diminished by Faye's liability and determined the expenses the parties incurred as a result of her failure to remain current on the mortgages. The court deducted Ashraf's liability of $2,000 for tuition and $4,250 for half the sale proceeds of the marital vehicles and concluded the net cost attributable to Faye's noncompliance was $37,837.95.

¶ 21    The court's initial allocation distributed $50,000 to each party. Rather than assess the increased expenses attributable to Faye from her half of the total proceeds, the court granted Ashraf the $37,837.95 and Faye $19,726.45. Taking into account the initial $50,000 distributions, Ashraf received $87,837.95 and Faye $69,726.45, a difference of $18,111.50.

¶ 22    In short, the circuit court effectively used funds that were Ashraf's property under the property division in the judgment to satisfy half of the diminished proceeds caused by Faye. The dissolution judgment was clear that Faye was to pay the mortgages, and this division is tantamount to an impermissible modification under section 510(b) of the Act. See *In re Marriage of Pitts*, 169 Ill. App. 3d 200, 209-211 (1988) (ordering wife to pay a percentage of the mortgage constituted an impermissible modification where original judgment required husband to pay the mortgage in full until sold). It engrafted a new obligation onto Ashraf that had his proceeds absorb some of Faye's financial liability relating to her delinquency that was not in the divorce decree. *Waggoner*, 78 Ill. 2d at 54.

¶ 23    While there is limited financial documentation before us on appeal, the record is sufficient to correct the court's calculation. Neither party appealed the circuit court's determination that Faye's actions or inactions resulted in expenses of $38,589.95 that diminished the home's sale proceeds and that would not have otherwise been incurred. Had Faye satisfied her obligations under the judgment, the sale would have resulted in net proceeds of $196,154.35 ($157,564.40 in

7

actual proceeds plus the $38,589.95 in additional expenses caused by Faye). Each party would have received either $98,077.18 or $98,077.17 but for Faye's delinquencies. Assigning the latter sum to Faye and subtracting $38,589.95 establishes her base share of the house proceeds as $59,487.22 versus Ashraf's base share entitlement of $98,077.18.

¶ 24 The circuit court also granted Ashraf's motion for storage and moving fees for $5,498 and Faye's motion for college expenses and vehicle proceeds for $6,250. When adjusting Ashraf's base share by subtracting $6,250 he owed Faye and adding his award of $5,498, his net entitlement is $97,325.18. Adjusting Faye's $59,487.22 base share by her $5,498 liability for moving and storage fees and adding the $6,250 Ashraf owed brings her net entitlement to $60,239.22. Accordingly, under Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), we modify the circuit court's judgment to reflect this division of proceeds. See *In re Marriage of Thomas*, 2026 IL App (1st) 242491, ¶¶ 50-51. We further direct the circuit court to enter any orders necessary to effectuate the division of proceeds in this manner as an appellate court may "enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief *** that the case may require." Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994).

¶ 25                                   III. CONCLUSION

¶ 26 The circuit court of Will County's postdissolution order is affirmed, except as to the distribution of proceeds from the sale of the marital home. Pursuant to Illinois Supreme Court Rule 366(a)(5), we modify the postdissolution order to award Ashraf $97,325.18 and Faye $60,239.22. Accordingly, this matter is remanded with direction to the circuit court to enter such judgments as are necessary in accordance with this order.

¶ 27 Affirmed as modified and remanded with directions.